No. 22-3292

# IN THE UNITED STATES COURT OF APPEALS
## FOR THE SIXTH CIRCUIT

| | | |
|---|---|---|
| STATE OF OHIO, STATE OF TENNESSEE, | : | On Appeal from the |
| | : | United States District Court |
| Plaintiffs-Appellants, | : | for the Southern District of Ohio |
| | : | Eastern Division |
| v. | : | |
| UNITED STATES ENVIRONMENTAL PROTECTION AGENCY, ET AL., | : | District Court Case No. |
| | : | 2:15-cv-2467 |
| Defendants-Appellees, | : | |
| NATURAL RESOURCES DEFENSE COUNCIL, NATIONAL WILDLIFE FEDERATION, | : | |
| | : | |
| | : | |
| Intervenors-Appellees. | : | |
| | : | |

## BRIEF OF APPELLANTS

HERBERT H. SLATERY III
Tennessee Attorney General
And Reporter
ANDRÉE S. BLUMSTEIN
Solicitor General
ELIZABETH P. McCARTER
Senior Assistant Attorney General
P. O. Box 20207
Nashville, Tennessee 37202
615-532-2582

DAVE YOST
Ohio Attorney General

BENJAMIN M. FLOWERS*
Solicitor General
 *Counsel of Record
ZACHERY P. KELLER
Deputy Solicitor General
30 East Broad Street, 17th Floor
Columbus, Ohio 43215
614-466-8980
benjamin.flowers@ohioago.gov

*Counsel for State of Tennessee*

*Counsel for State of Ohio*

# TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES ........................................................................iii

STATEMENT REGARDING ORAL ARGUMENT ..........................................viii

JURISDICTIONAL STATEMENT .............................................................1

STATEMENT OF THE ISSUE ..................................................................2

INTRODUCTION ..................................................................................4

STATEMENT .......................................................................................6

    A.    The Clean Water Act applies to "the waters of the United States," but defining the scope of those waters has proven difficult. ....................................................................................6

    B.    In 2015, the federal agencies promulgated a rule vastly expanding the meaning of "the waters of the United States." ...........................9

    C.    Since the 2015 Rule, litigation and uncertainty have been constant. ... 11

    D.    The agencies repealed and replaced the 2015 Rule; but, given litigation challenging those actions, this Court held that the States' case was not moot. ....................................................................14

    E.    The States moved for a permanent injunction, the 2020 Rule was vacated, and the agencies proposed a new rule. ...............................15

    F.    The District Court dismissed this case as moot. ...............................18

SUMMARY OF ARGUMENT .................................................................20

STANDARD OF REVIEW .....................................................................24

ARGUMENT ......................................................................................24

    I.    This case is not moot. ....................................................................24

A.      A defendant's voluntary cessation of alleged misconduct moots a case only if it is absolutely clear that the alleged misconduct and its effects have ended.................................................................25

B.      There remains a reasonable chance of the 2015 Rule's return; the rule has not been completely and irrevocably eradicated. ...................30

II.     The District Court's contrary analysis is unpersuasive. ...........................35

CONCLUSION.................................................................................................40

CERTIFICATE OF COMPLIANCE ................................................................. 41

CERTIFICATE OF SERVICE .........................................................................42

DESIGNATION OF DISTRICT COURT RECORD..........................................43

# TABLE OF AUTHORITIES

**Cases**                                                                **Page(s)**

*Brandywine, Inc. v. City of Richmond*,
  359 F.3d 830 (6th Cir. 2004) ................................................................36

*Campbell-Ewald Co. v. Gomez*,
  577 U.S. 153 (2016) ........................................................... 21, 25

*Chesapeake Bay Foundation, Inc. v. Regan*,
  No. 1:20-cv-01063 (D. Md.) ..........................................................17, 32

*City of Mesquite v. Aladdin's Castle*,
  455 U.S. 283 (1982).......................................................... 26, 27, 34

*Cleveland Branch, NAACP v. City of Parma*,
  263 F.3d 513 (6th Cir. 2001) .........................................................24

*County of Los Angeles v. Davis*,
  440 U.S. 625 (1979) ..............................................................*passim*

*County of Maui v. Hawaii Wildlife Fund*,
  140 S. Ct. 1462 (2020) ...................................................................8

*Dep't of Homeland Sec. v. New York*,
  140 S. Ct. 599 (2020) ........................................................ 5, 22, 30

*Dep't of Homeland Sec. v. Regents of the Univ. of California*,
  140 S. Ct. 1891 (2020)....................................................................29

*Friends of the Earth, Inc. v. Laidlaw Env'tl Services, Inc.*,
  528 U.S. 167 (2000) .....................................................................26

*Georgia v. Pruitt*,
  326 F. Supp. 3d 1356 (S.D. Ga. 2018).........................................13, 38

*Georgia v. Wheeler*,
  418 F. Supp. 3d 1336 (S.D. Ga. 2019) ......................................... 13

*Gill v. Whitford*,
  138 S. Ct. 1916 (2018)...................................................................21

*Knox v. Serv. Emps. Int'l Union, Loc. 1000*,
567 U.S. 298 (2012) ...................................................... 21, 26

*Leaders of a Beautiful Struggle v. Balt. Police Dep't*,
2 F.4th 330 (4th Cir. 2021)............................................26

*Mission Prod. Holdings v. Tempnology, LLC*,
139 S. Ct. 1652 (2019) .........................................21, 25, 26

*Mosley v. Hairston*,
920 F.2d 409 (6th Cir. 1990)......................................... 37

*Motor Vehicle Mfrs. Ass'n v. State Farm Mut. Auto. Ins. Co.*,
463 U.S. 29 (1983) ........................................................28

*Murray Energy Corp. v. Dep't of Def. (In re U.S. Dep't of Def.)*,
713 F. App'x 489 (6th Cir. 2018)..................................12

*Murray Energy Corp. v. Dep't of Def. (In re U.S. Dep't of Def.)*,
817 F.3d 261 (6th Cir. 2016) ........................................ 11

*Nat'l Ass'n of Mfrs. v. Dep't of Def.*,
138 S. Ct. 617 (2018) .................................................... 11

*Navajo Nation v. Regan*,
— F. Supp. 3d —, 2021 WL 4430466 (D.N.M. Sept. 27, 2021) ............16, 32, 38

*Navajo Nation* v. Regan,
No. 20-cv-00602 (D.N.M.).......................................17, 32

*New Mexico Cattle Growers' Assoc. v. EPA*,
No. 1:19-cv-988 (D.N.M.).......................................17, 32

*North Dakota v. EPA*,
127 F. Supp.3d 1047 (D. N.D. 2015)...................... 11, 13, 38

*Ohio v. Army Corps of Eng'rs (In re EPA & Dep't of Def. Final Order)*,
803 F.3d 804 (6th Cir. 2015) ........................................12

*Ohio v. EPA*,
969 F.3d 306 (6th Cir. 2020)..................................*passim*

*Pascua Yaqui Tribe* v. *EPA*,
   No. 20-cv-00266 (D. Ariz.) .................................................................. 17

*Pasqua Yaqui Tribe v. EPA*,
   557 F. Supp. 3d 949 (D. Ariz. 2021) .....................................*passim*

*Puget Soundkeeper All. v. EPA*,
   No. 2:20-cv-00950 (W.D. Wash.) .................................................17, 32

*Puget Soundkeeper All. v. Wheeler*,
   No. C15-1342, 2018 WL 6169196 (W.D. Wash. Nov. 26, 2018).................. 12, 38

*Rapanos v. United States*,
   547 U.S. 715 (2006)......................................................................*passim*

*S.C. Coastal Conservation League v. Pruitt*,
   318 F. Supp. 3d 959 (D.S.C. 2018) .......................................*passim*

*S.C. Coastal Conservation League v. Regan*,
   No. 2:19-cv-3006 (D.S.C.) ..................................................................... 18

*Sackett v. EPA*,
   No. 21-454 (U.S.)................................................................8, 17, 35

*Solid Waste Agency of N. Cook Cty. v. Army Corps of Eng'rs*,
   531 U.S. 159 (2001) .............................................................................7

*Speech First, Inc. v. Schlissel*,
   939 F.3d 756 (6th Cir. 2019)................................................*passim*

*Sullivan v. Benningfield*,
   920 F.3d 401 (6th Cir. 2019) ...............................................*passim*

*Summers v. Earth Island Inst.*,
   555 U.S. 488 (2000) ............................................................................25

*Susan B. Anthony List v. Driehaus*,
   573 U.S. 149 (2014) ...........................................................................26

*Texas v. EPA*,
   389 F. Supp. 3d 497 (S.D. Tex. 2019)................................................... 13

*Texas v. EPA*,
No. 3:15-CV-00162, 2018 U.S. Dist. LEXIS 160443 (S.D. Tex. Sept. 12, 2018) ....................................................................... 13

*Trinity Lutheran Church of Columbia, Inc. v. Comer*,
137 S. Ct. 2012 (2017) ...........................................................27, 33, 34

*United States v. Mashni*,
No. 2:18-cv-2288, 2022 WL 171288 (Jan. 19, 2022) ......................... 16

*United States v. Riverside Bayview Homes, Inc.*,
474 U.S. 121 (1985) .................................................................................7

*Washington Cattlemen's Assoc. v. EPA*,
No. 2:19-cv-569 (W.D. Wash) .......................................................17, 32

**Statutes and Constitutional Provisions**

U.S. Const., Art. III, §1............................................................20, 25

U.S. Const., Art. III, §2 ...................................................................25

79 Fed. Reg. 22188 (2014)..................................................................9

80 Fed. Reg. 37054 (2015)..........................................................*passim*

83 Fed. Reg. 5200 (2018) ..........................................................12, 35

84 Fed. Reg. 56626 (2019) .........................................................*passim*

85 Fed. Reg. 22250 (2020).........................................................*passim*

86 Fed. Reg. 69372 (2021).........................................................*passim*

5 U.S.C. §706 .....................................................................................29

28 U.S.C. §1291...................................................................................1

28 U.S.C. §1331 .............................................................................1, 6

33 U.S.C. §1313...................................................................................7

33 U.S.C. §1315...................................................................................7

33 U.S.C. §1341 ....................................................................................7

33 U.S.C. §1362 ....................................................................................6

Pub. L. No. 92-500, 86 Stat. 816 (1972) ...............................................6

**Other Authorities**

Albert C. Lin, *Uncooperative Environmental Federalism: State Suits Against the Federal Government in an Age of Political Polarization*, 88 Geo. Wash. L. Rev. 890 (2020) ...................................................29

*Current Implementation of Waters of the United States*, EPA (updated Sept. 16, 2021) .......................................................... 16, 32

EPA & U.S. Army Corps of Eng'rs, *Clean Water Act Jurisdiction Following the U.S. Supreme Court's Decision in* Rapanos v. United States & Carabell v. United States (Dec. 2, 2008) ...............................9

Petn. for Cert., *Sackett v. EPA*, No. 21-454.............................................9

*Revising the Definition of "Waters of the United States"*, EPA (updated May 4, 2022) ................................................................. 17

U.S. Army, *Definition of "Waters of the United States": Rule Status and Litigation Update* (Mar. 14, 2019) ................................. 13

## STATEMENT REGARDING ORAL ARGUMENT

This case raises important issues as to when challenges to a federal regulation become moot. Ohio and Tennessee request oral argument.

# JURISDICTIONAL STATEMENT

Ohio and Tennessee challenge 80 Fed. Reg. 37054 (2015) (the "2015 Rule"). The States allege that the 2015 Rule violates the Administrative Procedure Act, the Clean Water Act, and the United States Constitution. Am. Compl., R.20, PageID#77–78. The District Court had jurisdiction over those claims under 28 U.S.C. §1331. On March 23, 2022, the District Court dismissed the States' claims as moot. Op., R.126, PageID#2283. The States timely appealed that dismissal on April 4, 2022, *see* Notice of Appeal, R.128, PageID#2291, giving this Court jurisdiction under 28 U.S.C. §1291. As this brief will explain, the States' claims are not moot.

# STATEMENT OF THE ISSUE

The Clean Water Act regulates discharges of pollutants into "the waters of the United States." But which "waters" does that phrase capture? That question has inspired a great deal of litigation. In 2015, the Army Corps of Engineers and the EPA jointly promulgated a final rule with an aggressively broad definition of "the waters of the United States." Many States successfully challenged the 2015 Rule, and the agencies ultimately repealed the rule in 2019. 84 Fed. Reg. 56626 (2019) (the "2019 Repeal"). But the 2015 Rule might again take effect in Ohio and Tennessee. Many parties are still challenging the 2019 Repeal and one or more courts may enjoin the repeal nationwide, which would put the 2015 Rule back in force everywhere where it has not been enjoined—including Ohio and Tennessee.

Because the 2015 Rule may be resurrected, this Court concluded during a preliminary-injunction appeal that Ohio and Tennessee's challenge *was not* moot. *Ohio v. EPA*, 969 F.3d 306, 309–10 (6th Cir. 2020). But on remand, the District Court held that the case *was* moot. Op., R.126, PageID#2283. The District Court determined that, because the agencies are working on adopting a new definition of "the waters of the United States," the 2015 Rule's resurrection was no longer "foreseeable." *Id.*, PageID#2289 (quotations omitted).

All of that gives rise to the following question: Does a challenge to a federal regulation become moot once a regulation is repealed, even if the repeal is still being challenged?

# INTRODUCTION

This case requires applying a demanding mootness standard to a volatile federal regulation. A defendant's voluntary cessation of alleged misconduct moots a case "only in the 'rare instance' where subsequent events make it absolutely clear that the allegedly wrongful behavior cannot reasonably be expected to recur and 'interim relief or events have completely and irrevocably eradicated the effects of the alleged violation.'" *Sullivan v. Benningfield*, 920 F.3d 401, 410 (6th Cir. 2019) (emphasis added). That difficult-to-meet standard becomes even more difficult to meet when applied to any federal regulation of recent vintage. In present times, it is nearly impossible to be "absolutely" certain that a federal regulation is "completely and irrevocably" dead.

To understand why, consider some modern trends. With Congress gridlocked on any number of issues, recent administrations have increasingly viewed executive agencies as vehicles for policymaking. But that encroachment into Congress's domain has sparked litigation. To check abuses, States and other interested parties have increasingly challenged regulations they believe are illegal. And district courts have become more willing to enter nationwide injunctions halting regulations they deem illegal. That means a single court through a single order can change the regulatory landscape across the country. To complicate things further,

a repealed regulation can suddenly spring back to life through a nationwide injunction of the repeal. This litigation cycle can "repeat, *ad infinitum*, until either one side gives up" or the Supreme Court decides the underlying issue. *Dep't of Homeland Sec. v. New York*, 140 S. Ct. 599, 601 (2020) (Gorsuch, J., concurring in grant of stay).

That background informs this case. Ohio and Tennessee sued to enjoin the 2015 Rule, 80 Fed. Reg. 37054, a federal regulation that imposes an illegally broad definition of "the waters of the United States." The agencies have been trying to move past the 2015 Rule ever since losing a series of court battles over its legality. The problem is that courts have overturned several of the agencies' attempts at replacing the 2015 Rule. *See S.C. Coastal Conservation League v. Pruitt*, 318 F. Supp. 3d 959 (D.S.C. 2018); *Pasqua Yaqui Tribe v. EPA*, 557 F. Supp. 3d 949 (D. Ariz. 2021). Today, only a single regulation—the 2019 Repeal, 84 Fed. Reg. 56626—prevents the 2015 Rule's application in Ohio and Tennessee. And the 2019 Repeal faces legal challenges of its own. Those challenges are currently stayed, but several cases remain pending across the country. Because plaintiffs are not dismissing those cases, there remains a reasonable chance that the 2015 Rule will be exhumed. At a minimum, the effects of the 2015 Rule have not been "completely and irrevocably eradicated." *County of Los Angeles v. Davis*, 440 U.S. 625, 631 (1979). As a

consequence, a permanent injunction blocking the 2015 Rule's future application in Ohio and Tennessee would still afford the States meaningful relief. That means this case is not moot.

This Court recognized that in a preliminary decision two years ago, *Ohio v. EPA*, 969 F.3d 306, 309–10 (6th Cir. 2020), but the District Court dismissed this case as moot anyway. This Court should reverse.

## STATEMENT

This case has a long history. Understanding that history—along with related events surrounding "the waters of the United States"—is key to understanding the mootness issues at the center of this appeal.

**A.** **The Clean Water Act applies to "the waters of the United States," but defining the scope of those waters has proven difficult.**

Congress enacted the Clean Water Act in 1972. *See* Pub. L. No. 92-500, 86 Stat. 816 (1972). The Act prohibits "the discharge of any pollutant," 33 U.S.C. §1311(a), including "any addition of any pollutant to navigable waters from any point source," 33 U.S.C. §1362(12)(A). It defines "navigable waters" to mean "the waters of the United States, including the territorial seas." 33 U.S.C. §1362(7). Thus, it covers only "the waters of the United States," as opposed to *all* waters.

The Act conscripts the States to assist the federal government in regulating "the waters of the United States." States, for example, must have federally ap-

proved quality standards for such waters. 33 U.S.C. §1313. And they must submit biennial reports on water quality. 33 U.S.C. §1315. States also assist with the issuance of federal permits by certifying that proposed projects impacting "the waters of the United States" comply with the Act. 33 U.S.C. §1341(a).

Despite the importance of the phrase, the Clean Water Act does not define "the waters of the United States." Traditionally, the Supreme Court "had interpreted the phrase 'navigable waters of the United States'" to mean "interstate waters that are 'navigable in fact' or readily susceptible of being rendered so." *Rapanos v. United States*, 547 U.S. 715, 723 (2006) (plurality) (citing *The Daniel Ball*, 77 U.S. 557, 563 (1871)). Shortly after the Act's passage, the U.S. Army Corps of Engineers also adopted that traditional definition. *See id.* (citing 39 Fed. Reg. 12119 (1974)). But the Corps soon expanded the definition, seeking to regulate to the outer limits of federal commerce power. *See id.* at 724 (citing 42 Fed. Reg. 37144 n.2 (1977)).

The Supreme Court has thrice addressed the scope of "the waters of the United States." *See United States v. Riverside Bayview Homes, Inc.*, 474 U.S. 121 (1985); *Solid Waste Agency of N. Cook Cty. v. Army Corps of Eng'rs*, 531 U.S. 159 (2001) ("*SWANCC*"); *Rapanos*, 547 U.S. 715. Most recently, in *Rapanos*, the Court fractured on the phrase's meaning. A four-justice plurality interpreted "the waters

of the United States" to include "only those relatively permanent, standing or continuously flowing bodies of water … that are described in ordinary parlance as streams, oceans, rivers, and lakes." *Rapanos*, 547 U.S. at 739 (quotations omitted, alterations accepted). The plurality further explained that, for wetlands to qualify as federal waters, they must have "a continuous surface connection to bodies that are 'waters of the United States' in their own right." *Id*. at 742. Justice Kennedy filed a separate opinion concurring in the judgment. *Id*. at 759–87 (Kennedy, J., concurring in judgment). Under his fact-intensive test, waters that are not traditionally navigable qualify as "the waters of the United States" if they possess "a 'significant nexus' to waters that are or were navigable in fact or that could reasonably be so made." *Id*. at 759.

Next term, the Supreme Court will again address the meaning of "the waters of the United States." More precisely, it will consider whether to adopt the *Rapanos* plurality's rule as the governing test. *See Sackett v. EPA*, No. 21-454 (U.S.). There is a fair prospect the Court will adopt that test. Three of the four members of the *Rapanos* plurality remain on the Court. A fourth Justice has endorsed the *Rapanos* test. *See County of Maui v. Hawaii Wildlife Fund*, 140 S. Ct. 1462, 1478 (2020) (Kavanaugh, J., concurring). And the petition the Court agreed to hear presents just one question: "Should *Rapanos* be revisited to adopt the plurality's test

for wetlands jurisdiction under the Clean Water Act?"  Petn. for Cert. at i, *Sackett*, No. 21-454.

> **B.** **In 2015, the federal agencies promulgated a rule vastly expanding the meaning of "the waters of the United States."**

Following *Rapanos*, the Corps and the EPA issued guidance to limit the scope of their authority.  EPA & U.S. Army Corps of Eng'rs, *Clean Water Act Jurisdiction Following the U.S. Supreme Court's Decision in* Rapanos v. United States & Carabell v. United States (Dec. 2, 2008), https://perma.cc/2MP4-Z6K3.  That guidance identified just four types of "waters" that categorically qualified as "the waters of the United States":  (1) traditional navigable waters; (2) wetlands adjacent to traditional navigable waters; (3) relatively permanent tributaries of traditional navigable waters; and (4) wetlands that directly abut relatively permanent tributaries.  *Id.* at 1.  The agencies stated that they would decide jurisdiction over other types of waters, such as non-permanent tributaries, on a case-by-case basis.  *Id.*

Near the end of the Obama Administration, however, the agencies took a more aggressive approach.  In early 2014, they proposed a rule redefining "the waters of the United States."  79 Fed. Reg. 22188 (2014).  A year later, after making various changes to the initially proposed definition, the agencies published the 2015 Rule.  80 Fed. Reg. 37054 (2015).

The 2015 Rule expanded the pre-existing meaning of "the waters of the United States" in several significant ways. For example, it said that all "tributaries" qualify as "the waters of the United States." *Id.* at 37104. And it broadly defined "tributaries" such that a tributary's features may be inferred through the use of "desktop tools" and may even include land that is often dry due to "intermittent, or ephemeral" flow. *See id.* at 37076–77. The 2015 Rule also categorically includes "[a]ll waters adjacent to" other jurisdictional waters, including tributaries, as "the waters of the United States." *Id.* at 37104. The rule then defines "adjacent" to include "neighboring." *Id.* at 37105. And it defines "neighboring" to include waters that fall within one of multiple distance thresholds. *Id.* These "adjacent" water definitions confer jurisdiction over "any single water or wetland" so long as "the water is at least partially located within the distance threshold." *Id.* at 37081. The 2015 Rule's combined definitions of "waters of the United States" are so broad that the agencies found it necessary to expressly exclude swimming pools and puddles; absent such an exemption, these waters might qualify as "waters of the United States" under the expansive definition. *Id.* at 37105.

**C.     Since the 2015 Rule, litigation and uncertainty have been constant.**

The 2015 Rule brought forth a wave of litigation and subsequent rulemaking. This case, for instance, began in the summer of 2015, when Ohio, Tennessee, and Michigan sued to enjoin the new rule shortly after the agencies promulgated it. Am. Complaint, R.20, PageID#62.  (Michigan later withdrew, and two intervenors—the Natural Resources Defense Council, Inc., and the National Wildlife Federation—eventually joined the case.)  The States argued that the 2015 Rule violated the Administrative Procedure Act, the Clean Water Act, and the Constitution.  *Id.*, PageID#76–78.  Other States filed similar claims in other courts and soon received injunctions blocking the 2015 Rule's application within their borders.  *See North Dakota v. EPA*, 127 F. Supp.3d 1047, 1060 (D. N.D. 2015) (granting injunctive relief to North Dakota, Alaska, Arizona, Arkansas, Colorado, Idaho, Missouri, Montana, Nebraska, Nevada, New Mexico, South Dakota, and Wyoming).

Ohio and Tennessee did not fare as well.  Though they moved for a preliminary injunction, a jurisdictional dispute sidetracked those proceedings.  Both the District Court and this Court held that States needed to challenge the 2015 Rule in the courts of appeals.  *See Murray Energy Corp. v. Dep't of Def. (In re U.S. Dep't of Def.)*, 817 F.3d 261 (6th Cir. 2016).  The Supreme Court ultimately disagreed.  *Nat'l Ass'n of Mfrs. v. Dep't of Def.*, 138 S. Ct. 617 (2018).  But, before it issued its deci-

sion, this Court stayed the 2015 Rule's application pending the case's resolution. *See Ohio v. Army Corps of Eng'rs (In re EPA & Dep't of Def. Final Order)*, 803 F.3d 804, 806 (6th Cir. 2015). Among other things, this Court concluded that the agencies' "rulemaking process" was "facially suspect" because of differences between the 2015 Rule and the proposed rule. *Id.* at 807. Although this Court vacated its stay in light of the Supreme Court's jurisdictional ruling, *Murray Energy Corp. v. Dep't of Def. (In re U.S. Dep't of Def.)*, 713 F. App'x 489 (6th Cir. 2018), that stay had the effect of making the 2015 Rule inapplicable in Ohio and Tennessee for over a year.

Back in the District Court, the States renewed their request for a preliminary injunction. Supp. Memo. Prel. Inj., R.64, PageID#774. Meanwhile, the agencies tried to undo the 2015 Rule. In 2018, they published the "Suspension Rule," pausing the 2015 Rule's application until February 2020. 83 Fed. Reg. 5200 (2018). The Suspension Rule caused even more litigation. Environmental groups challenged the agencies' rulemaking process, seeking to enjoin the Suspension Rule and give the 2015 Rule immediate effect. *See, e.g.*, *S.C. Coastal Conservation League*, 318 F. Supp. 3d 959; *Puget Soundkeeper All. v. Wheeler*, No. C15-1342, 2018 WL 6169196 (W.D. Wash. Nov. 26, 2018). In August 2018, the District of South Carolina granted those groups relief, enjoining the Suspension Rule nationwide. *S.C. Coastal Con-*

12

*servation League*, 318 F. Supp. 3d at 969–70. That relief put the 2015 Rule back into effect for every State where it had not been enjoined—including Ohio and Tennessee.

In the wake of that nationwide injunction, a "confusing patchwork of federal regulations" existed across the country. U.S. Army, *Definition of "Waters of the United States": Rule Status and Litigation Update* (Mar. 14, 2019), https://perma.cc/ R474-MVM2. Courts enjoined the 2015 Rule's application in twenty-seven States. *See Georgia v. Pruitt*, 326 F. Supp. 3d 1356 (S.D. Ga. 2018); *Texas v. EPA*, No. 3:15-CV-00162, 2018 U.S. Dist. LEXIS 160443 (S.D. Tex. Sept. 12, 2018); *North Dakota v. EPA*, 127 F. Supp.3d 1047 (D.N.D. 2015). Some of those States later won summary judgment. *See Georgia v. Wheeler*, 418 F. Supp. 3d 1336 (S.D. Ga. 2019); *Texas v. EPA*, 389 F. Supp. 3d 497 (S.D. Tex. 2019). For the remaining States, including Ohio and Tennessee, the 2015 Rule became effective in August 2018 when the District of South Carolina enjoined the Suspension Rule. *See S.C. Coastal Conservation League*, 318 F. Supp. 3d 959.

But, despite the 2015 Rule's application to Ohio and Tennessee, the District Court denied the States a preliminary injunction without considering the merits. Opinion & Order, R.86, PageID#1175.

**D.** **The agencies repealed and replaced the 2015 Rule; but, given litigation challenging those actions, this Court held that the States' case was not moot.**

Ohio and Tennessee appealed the District Court's preliminary-injunction ruling to this Court. For many months while that appeal was pending, the States remained subject to the 2015 Rule. But in October 2019, the agencies repealed the 2015 Rule. 84 Fed. Reg. 56626 (2019) (the "2019 Repeal"). Then, the next spring, the agencies finalized a new definition of "the waters of the United States." 85 Fed. Reg. 22250 (2020) (the "2020 Rule"). Much like the 2018 Suspension Rule, the 2019 Repeal and the 2020 Rule sparked lawsuits across the country. *See Ohio v. EPA*, 969 F.3d 306, 309 (6th Cir. 2020). More on those lawsuits in a moment. The key point for present purposes is that, at the time of the States' 2019 preliminary-injunction appeal, those lawsuits were in their early stages. *See id.*

In August 2020, this Court dismissed the States' appeal as moot with respect to *preliminary* relief. With the 2015 Rule repealed and replaced, the Court reasoned that it was unlikely that the States would be harmed "during the pendency of their case." *Id.* at 310. The Court recognized, however, that "the case as a whole … remains a live one." *Id.* That was because there remained a sufficient likelihood of the 2015 Rule's revival, "given the recent proliferation of nationwide injunctions and the pendency of 15 cases challenging" the 2019 Repeal and the 2020 Rule. *Id.*

The Court further stressed that the presumptive reason why plaintiffs in "those cases" were "litigating them" was so that "the 2015 Rule might again take effect nationwide." *Id.* Because case was not moot, the Court remanded the case to the District Court so it could "make its decision regarding a permanent injunction before a court in one of the other cases potentially restores the 2015 Rule nationwide." *Id.*

> **E.** **The States moved for a permanent injunction, the 2020 Rule was vacated, and the agencies proposed a new rule.**

After remand, Ohio and Tennessee moved for summary judgment and requested a permanent injunction of the 2015 Rule. States' Mot. Summ. J., R.103, PageID#1241. The agencies opposed summary judgment, but they did not defend the 2015 Rule on the merits. Rather, the agencies argued that the District Court should "dismiss this matter as having become moot." Agencies' Opp'n, R.111, PageID#1349. (In other attempts to avoid the merits, the agencies argued that the case was not prudentially ripe, *id.*, PageID#1343–46, and that the States failed to present sufficient evidence of injury to prove entitlement to summary judgment, *id.*, PageID#1340–43. The agencies were wrong on both fronts, *see* States' Reply, R.116, PageID#2171–80, 2189–91, but the District Court did not reach either issue.) The intervenors, for their part, moved for summary judgment and attempted to de-

15

fend the 2015 Rule on the merits.  Intervenors' Combined Mot. Summ. J. & Opp'n, R.112, PageID#1357.

Around the time of this motion practice, a few developments occurred. First, in August 2021, a separate district court vacated the 2020 Rule.  *Pasqua Yaqui Tribe v. EPA*, 557 F. Supp. 3d 949 (D. Ariz. 2021); *see also Navajo Nation v. Regan*, — F. Supp. 3d —, 2021 WL 4430466 (D.N.M. Sept. 27, 2021).  The agencies interpreted that ruling as having nationwide effect.  They thus "halted implementation" of the 2020 Rule across the country.  *Current Implementation of Waters of the United States*, EPA (updated Sept. 16, 2021), https://perma.cc/HJ67-3Z5A; *but see United States v. Mashni*, No. 2:18-cv-2288, 2022 WL 171288 at *3 n.1 (Jan. 19, 2022) (regulated parties arguing that the 2020 Rule still has effect in certain parts of the country).

Second, late last year, the agencies jointly proposed a new rule concerning the definition of "the waters of the United States."  86 Fed. Reg. 69372 (2021) (the "2021 Proposal").  The stated goal of the 2021 Proposal is "the replacement of" the 2020 Rule.  *Id*. at 69373.  As the agencies describe it, the 2021 Proposal—if finalized—would reinstitute "the familiar pre-2015" regulations that governed federal jurisdiction over waters.  *Id*.  As just mentioned, a district court vacated the 2020 Rule.  And that occurred *before* the agencies issued the 2021 Proposal.  The

agencies, however, were "aware that further developments in litigation … could bring [the 2020 Rule] back into effect." *Id.*; *see also id.* at 69382 & n.18. And they expressed "significant concerns regarding the legal rationale underpinning the 2019 Repeal." *Id.* at 69407. Thus, even with the 2020 Rule vacated, the agencies thought that the 2021 Proposal was "vital" to preventing the 2020 Rule's recurrence, *id.* at 69373, and ensuring a return to "the pre-2015 regulatory framework," *id.* at 69407. The 2021 Proposal, of course, is just a proposal: the agencies remain in the process of considering public comments. *See Revising the Definition of "Waters of the United States"*, EPA (updated May 4, 2022), https://perma.cc/J7SU-CKLF. (Perhaps they will wait to see what the Court says in *Sackett* about the meaning of "the waters of the United States" before acting.)

Given these developments, the only thing that now restrains the 2015 Rule is the 2019 Repeal. Presently, litigation over the 2019 Repeal is stayed while the agencies continue their rulemaking process. But several challenges to the 2019 Repeal remain pending before district courts across the country. *See Pascua Yaqui Tribe* v. *EPA,* No. 20-cv-00266 (D. Ariz.); *Navajo Nation* v. *Regan,* No. 20-cv-00602 (D.N.M.); *Chesapeake Bay Foundation, Inc. v. Regan*, No. 1:20-cv-01063 (D. Md.); *Puget Soundkeeper All. v. EPA*, No. 2:20-cv-00950 (W.D. Wash.); *New Mexico Cattle Growers' Assoc. v. EPA*, No. 1:19-cv-988 (D.N.M.); *Washington Cattlemen's Assoc. v.*

*EPA*, No. 2:19-cv-569 (W.D. Wash).  Until recently, the intervenors, along with nine other plaintiffs, were also challenging the 2019 Repeal.  *See S.C. Coastal Conserva-tion League v. Regan*, No. 2:19-cv-3006 (D.S.C.).  They voluntarily dismissed their case *without* prejudice late last year.

### F.     The District Court dismissed this case as moot.

In late March, the District Court dismissed the States' lawsuit as moot.  Op., R.126, PageID#2283–89.  The District Court recognized that a defendant's "volun-tary cessation of allegedly illegal conduct" does not generally moot a case.  *Id.*, PageID#2286 (quotations omitted).  It said, however, that a defendant "demon-strates" mootness if "there is no reasonable expectation that the wrong will be re-peated."  *Id.* (quotations omitted).  According to the District Court, if a "govern-ment body 'self-corrects,'" that supplies "a secure foundation" for dismissing a case as moot.  *Id.*, PageID#2288 (quoting *Mosley v. Hairston*, 920 F.2d 409, 415 (6th Cir. 1990)).  And it was "well-established," the District Court suggested, that courts cannot award meaningful relief as to laws that are no longer in effect.  *Id.* (citing *Brandywine, Inc. v. City of Richmond*, 359 F.3d 830, 836 (6th Cir. 2004)).

Applying that version of mootness, the District Court held that the States' challenges to the 2015 Rule were moot.  It said that a return of the 2015 Rule was not reasonably foreseeable.  *Id.*, PageID#2289.  It reasoned that, because the agen-

cies had "replaced" the 2015 Rule, ruling on the merits "would be tantamount to issuing an advisory opinion." *Id.*, PageID#2288. The District Court believed these conclusions were reconcilable with this Court's earlier conclusion, in August 2020, that the case was not moot. *See Ohio v. EPA*, 969 F.3d 306. That was so, the District Court explained, because there were fewer total cases challenging the 2019 Repeal and 2020 Rule than there were at the time of this Court's mootness ruling, and because litigation over the 2019 Repeal was presently stayed. Op., R.126, PageID#2288–89.

The District Court also put much stock in the agencies' 2021 Proposal. (Before its mootness ruling, unprompted by any party, the District Court ordered the parties to submit supplemental briefing regarding the 2021 Proposal. Or., R.120, PageID#2247.) The District Court presumed it was "likely" that the agencies would finalize the 2021 Proposal. Op., R.126, PageID#2288. It further presumed that the 2021 Proposal would "promptly nullif[y]" the 2015 Rule should the 2019 Repeal be enjoined. *Id.*, PageID#2289. Though willing to make these presumptions about the 2021 Proposal, the District Court rejected as overly "speculative" the States' argument that the 2021 Proposal may also face litigation. *Id.*

*

Shortly after the District Court's dismissal, Ohio and Tennessee timely filed this appeal. Notice, R.128, PageID#2291. Before turning to the merits of this appeal, three aspects of the above history deserve emphasis. *First*, all of the agencies' attempts to move past the 2015 Rule (the 2018 Suspension, the 2019 Repeal, and the 2020 Rule) have been challenged in court and, of those attempts, only the 2019 Repeal remains in force. *Second*, notwithstanding the agencies' attempts to displace the 2015 Rule, Ohio and Tennessee were subject to the 2015 Rule for over a year during the pendency of this case. More precisely, the 2015 Rule was in effect in Ohio and Tennessee from August 2018 (when a district court enjoined the 2018 Suspension Rule, *see Pruitt*, 318 F. Supp. 3d 959) until October 2019 (when the agencies finalized the 2019 Repeal, 84 Fed. Reg. 56626). *Third*, when this Court held that this case was not moot, two regulations (the 2019 Repeal and the 2020 Rule) blocked the 2015 Rule from having effect in Ohio and Tennessee. When the District Court held that this case was moot, only one of those regulations (the 2019 Repeal) remained in place.

## SUMMARY OF ARGUMENT

I.    The judicial power of federal courts is limited to "Cases" and "Controversies." U.S. Const., Art. III, §1. A "case" or "controversy" requires a

plaintiff with "standing" to sue, and plaintiffs have standing only if they have some "personal stake in the outcome." *Gill v. Whitford*, 138 S. Ct. 1916, 1923 (2018) (quoting *Baker v. Carr*, 369 U.S. 186, 204 (1962)).  If a party loses its personal stake in the outcome after the case is filed, the case is moot and the court loses jurisdiction to decide it.  *Campbell-Ewald Co. v. Gomez*, 577 U.S. 153, 160–61 (2016).

The party seeking to have a case dismissed as moot bears the burden of proving mootness.  And the burden is weighty.  "As long as the parties have a concrete interest, however small, in the outcome of the litigation, the case is not moot." *Knox v. Serv. Emps. Int'l Union, Loc. 1000*, 567 U.S. 298, 307–08 (2012) (quotations omitted).  A case, in other words, will become moot "only if it is impossible for a court to grant any effectual relief whatever." *Mission Prod. Holdings v. Tempnology, LLC*, 139 S. Ct. 1652, 1660 (2019).

Consistent with mootness's demanding standard, a defendant's voluntary choice to cease alleged misconduct will generally not moot a case.  *Speech First, Inc. v. Schlissel*, 939 F.3d 756, 767 (6th Cir. 2019).  To prove the exception, a defendant claiming mootness based on voluntary cessation must show:  (1) that "there is no reasonable expectation that the alleged violation will recur"; and (2) that "interim relief or events have completely and irrevocably eradicated the effects of the alleged violation."  *Davis*, 440 U.S. at 631 (alterations accepted).  Courts afford a govern-

ment's voluntary cessation of misconduct some solicitude when considering voluntary cessation, but how much solicitude varies depending on the context. *Schlissel*, 939 F.3d at 768. Even a change in law will not moot a case if there remains an arguable threat of harm to the plaintiff. *Sullivan*, 920 F.3d at 410–11; *accord Ohio v. EPA*, 969 F.3d at 309–10. At bottom, for a case to be moot based on voluntary cessation, it must be "absolutely clear" that both the alleged wrongdoing and its effects have ended. *Sullivan*, 920 F.3d at 410 (quotations omitted). That standard will be especially hard to meet when the challenged conduct is a federal regulation. Given the current state of litigation over agency rulemaking, and the growing prevalence of nationwide injunctions, there will almost always be a fair prospect that a recently rescinded regulation could again take effect. *See Dep't of Homeland Sec. v. New York*, 140 S. Ct. at 601 (Gorsuch, J., concurring in grant of stay); *Ohio v. EPA*, 969 F.3d at 309–10.

This case does not satisfy mootness's demanding standard, as this Court held two years ago. *Id.* Though the agencies have attempted to move past the 2015 Rule, all of their attempts have faced litigation. And the agencies have already lost much of that litigation. *S.C. Coastal Conservation League*, 318 F. Supp. 3d 959; *Pasqua Yaqui Tribe*, 557 F.Supp. 3d 949. Today, only the 2019 Repeal prevents the 2015 Rule from again taking effect in Ohio and Tennessee. And, though litigation

over the 2019 Repeal is presently stayed, the 2019 Repeal continues to face legal challenges in cases pending across the country. Thus, it is not "absolutely clear" that the 2015 Rule is dead and buried. *See Sullivan*, 920 F.3d at 410. At the very least, the effects of the 2015 Rule have not been "irrevocably eradicated" in Ohio and Tennessee. *See id.* That means this case is not moot.

**II.** The District Court erred in holding otherwise. Of particular import, it failed to hold the agencies—the parties claiming mootness—to a sufficiently demanding legal standard. The District Court, for example, did not address whether the 2015 Rule has been "completely and irrevocably eradicated," even though that is a required part of the mootness analysis. *See Davis*, 440 U.S. at 631. The District Court also suggested that it had no ability to afford meaningful relief as to a regulation that was no longer in effect. *See* Op., R.126, PageID#2288. Contrary to that suggestion, a change in law does not automatically moot a case. *Sullivan*, 920 F.3d at 410–11. Mootness instead considers all "relevant circumstance" surrounding a change in law, including litigation that might reverse a change in law. *Ohio v. EPA*, 969 F.3d at 309–10.

The District Court further erred when it looked to the specifics of this case. Its mootness analysis relied heavily on the agencies' 2021 Proposal. But the 2021 Proposal is not final agency action, and the District Court wrongly presumed—in

the agencies' and intervenors' favor, despite their burden—that all will go smoothly during the ongoing rulemaking process.  *See* Op., R.126, PageID#2288–89.  It further presumed that the 2021 Proposal, if finalized, will face no litigation.  *Id.*  Along related lines, the District Court presumed that none of the plaintiffs challenging the 2019 Repeal will continue with their cases.  *Id.*  But there remains a reasonable chance of such litigation restarting.  After all, many plaintiffs challenging the 2019 Repeal have chosen to wait and see how things progress with the 2021 Proposal rather than dismissing their cases.  Presumably, these litigants have chosen that course because they still foresee a possibility that "the 2015 Rule might again take effect."  *Ohio v. EPA*, 969 F.3d at 310.

## STANDARD OF REVIEW

This "[C]ourt reviews questions of … mootness de novo," *Sullivan*, 920 F.3d at 407, including grants of "summary judgment on mootness grounds," *Cleveland Branch, NAACP v. City of Parma*, 263 F.3d 513, 530 (6th Cir. 2001).

## ARGUMENT

### I.  This case is not moot.

"A defendant's voluntary cessation of a challenged practice moots a case only in the rare instance."  *Sullivan*, 920 F.3d at 410.  This case is not one of those rare instances.  As this Court correctly held two years ago, because of the reasonable

possibility that litigation will lead to the 2015 Rule's return, this case remains live. *Ohio v. EPA*, 969 F.3d at 310.

**A.** **A defendant's voluntary cessation of alleged misconduct moots a case only if it is absolutely clear that the alleged misconduct and its effects have ended.**

**1.** The Constitution vests federal courts with the "judicial Power." U.S. Const., Art. III, §1. It permits them to exercise that power only in "Cases" and "Controversies." *Id.*, Art. III, §2. A dispute qualifies as a case or controversy only if the plaintiff has "standing"—only if the plaintiff has some "concrete interest" in the case's resolution, as opposed to an abstract interest in the resolution of a legal question. *Summers v. Earth Island Inst.*, 555 U.S. 488, 496 (2000). A case or controversy must persist "at all stages of review, not merely at the time the complaint is filed." *Campbell-Ewald Co.*, 577 U.S. at 160 (quotations omitted). Therefore, if "at any point during litigation" a plaintiff ceases to have a "personal stake in the outcome of the lawsuit," the case is moot and courts may not decide it. *Id.* at 160–61 (quotations omitted).

But a defendant claiming mootness must satisfy a "demanding standard." *Mission Prod. Holdings*, 139 S. Ct. at 1660. A case becomes moot "only if it is impossible for a court to grant any effectual relief whatever." *Id.* (quotations omitted). "As long as the parties have a concrete interest, however small, in the outcome of

25

the litigation, the case is not moot." *Knox*, 567 U.S. at 307–08 (quotations omitted).

Mootness, it follows, is not a tool for deciding the wisdom of a plaintiff's choosing to press on with litigation that has narrowed over time. *Leaders of a Beautiful Struggle v. Balt. Police Dep't*, 2 F.4th 330, 338 (4th Cir. 2021). Even when the "consequences" of a case have "shrunk considerably," so long as relief "would have some effect," courts "may not deprive [p]laintiffs of their of appeal rights." *Id.* In other words, if a plaintiff retains some concrete interest in a case, "however small," *Knox*, 567 U.S. at 307, then a "case is not technically moot" and a court has "no choice but to decide it," *City of Mesquite v. Aladdin's Castle*, 455 U.S. 283, 289 n.10 (1982). That squares with the "virtually unflagging" duty of federal courts "to hear and decide cases" within their jurisdiction. *Susan B. Anthony List v. Driehaus*, 573 U.S. 149, 167 (2014) (quotations omitted).

Sometimes, a case becomes moot when a defendant voluntarily ceases the conduct a plaintiff challenges. But a defendant's voluntary cessation of unlawful conduct "does not, as a general rule, moot a case." *Schlissel*, 939 F.3d at 767. Rather, consistent with the "demanding standard" that governs the mootness inquiry, *Mission Prod. Holdings*, 139 S. Ct. at 1660, a defendant arguing voluntary cessation must carry a "heavy burden," *Friends of the Earth, Inc. v. Laidlaw Env'tl Services, Inc.*, 528 U.S. 167, 189 (2000) (quotations omitted). Specifically, a defendant argu-

ing that its voluntary cessation of alleged misconduct has mooted a case must establish two things: (1) that "there is no reasonable expectation that the alleged violation will recur"; and (2) that "interim relief or events have completely and irrevocably eradicated the effects of the alleged violation." *Davis*, 440 U.S. at 631 (alterations accepted).; *accord Schlissel*, 939 F.3d at 767. To satisfy these standards, defendants must do more than predict that alleged violations, and their effects, have "probably" ended. Rather, the circumstances must make it "*absolutely clear* that the allegedly wrongful behavior" and the effects of that behavior are over. *Trinity Lutheran Church of Columbia, Inc. v. Comer*, 137 S. Ct. 2012, 2019 n.1 (2017) (emphasis added, quotations omitted); *accord Sullivan*, 920 F.3d at 410. Thus, for mootness purposes, a plaintiff has a "reasonable expectation" that wrongdoing will recur, *Davis*, 440 U.S. at 631, until a defendant shows with "certainty" that its "voluntary cessation" has resolved the alleged problem, *Aladdin's Castle*, 455 U.S. at 289.

When government defendants voluntarily cease conduct that a plaintiff is challenging, courts will afford them "some solicitude" in deciding whether the challenged conduct is likely to recur. *Schlissel*, 939 F.3d at 768. But the "degree of solicitude" varies depending on the facts. *Id*. Though mootness analysis "is often based upon abstractions," it is "driven above all by practicalities." *Ohio v. EPA*, 969

F.3d at 309. It follows that the repeal of a challenged law does not automatically moot a case. *Sullivan*, 920 F.3d at 410–11. "Where the changes in the law arguably do not remove the harm or threatened harm underlying the dispute, the case remains alive and suitable for judicial determination." *Id.* (quotations omitted). Thus, courts consider "*the effects* of the legal changes," as well as the potential "consequences" that might come about even with the change in law. *id.* at 411–13 (emphasis added). Along the same lines, analysis of mootness must account for whether litigation might undo a change in law. *Ohio v. EPA*, 969 F.3d at 309–10. In sum, everything depends on context; courts assess mootness with reference to "the totality of the circumstances surrounding the voluntary cessation." *Schlissel*, 939 F.3d at 768.

**2.** "[T]he totality of the circumstances surrounding the voluntary cessation" in this case includes the current state of rulemaking by federal agencies. Before turning to the specifics of this case, a few broader points deserve emphasis.

Federal regulations are often a moving target. They can be "imposed, amended, rescinded, reimposed, and … rescinded again," *Motor Vehicle Mfrs. Ass'n v. State Farm Mut. Auto. Ins. Co.*, 463 U.S. 29, 34 (1983), depending on the views of an agency (or, more realistically, an administration) at any given time. And federal law gives interested parties, including the States, broad ability to challenge new

regulations for substantive or procedural reasons.  5 U.S.C. §706(2).  If new regula-

tions are successfully challenged, then old regulations spring back to life.  *See, e.g.*,

*Dep't of Homeland Sec. v. Regents of the Univ. of California*, 140 S. Ct. 1891, 1901

(2020).

These features of rulemaking are not new, but things have escalated of late.

In this era of increased polarization, recent administrations have "become increas-

ingly reliant on unilateral action" through executive agencies "to overcome con-

gressional gridlock" on hot-button issues.  Albert C. Lin, *Uncooperative Environ-*

*mental Federalism: State Suits Against the Federal Government in an Age of Political*

*Polarization*, 88 Geo. Wash. L. Rev. 890, 938 (2020).  Agencies' aggressively push-

ing the boundaries of their policymaking power—which often entails stretching

"preexisting statutory grants of statutory authority," *see id*. at 941—heightens the

danger that the federal government will exceed its lawful authority.  To prevent that

from happening, States and private parties across the ideological spectrum have of-

ten "taken turns" challenging federal regulations.  *Id*. at 915.  Such cycles of litiga-

tion have swallowed a number of issues in recent years, including the "ongoing re-

visions to the definition of the 'waters of the United States.'"  *Id*. at 916.

Another legal development contributes to the volatility of federal regulations.

It has become "increasingly common" for district courts to issue "nationwide" or

"universal" injunctions that, in a single stroke, change the regulatory landscape "across the country." *Dep't of Homeland Sec. v. New York*, 140 S. Ct. at 601 (Gorsuch, J., concurring in grant of stay). This "recent proliferation of nationwide injunctions" matters a great deal to mootness considerations. *See Ohio v. EPA*, 969 F.3d at 310. The prospect of a nationwide injunction means that a seemingly repealed injunction could spring back to life at any moment. And every regulation that replaces it—whether through agency promulgation or court-ordered resuscitation—can be challenged "repeat[edly], *ad infinitum*, until either one side gives up or [the Supreme] Court grants certiorari." *Dep't of Homeland Sec. v. New York*, 140 S. Ct. at 601 (Gorsuch, J., concurring in grant of stay). Thus, it will be the rarest of "rare instance[s]" where a court can be "absolutely" certain that the effects of an allegedly illegal regulation have been "completely and irrevocably eradicated." *See Sullivan*, 920 F.3d at 410.

B. **There remains a reasonable chance of the 2015 Rule's return; the rule has not been completely and irrevocably eradicated.**

Applying the above principles, this case is not moot. The States accept—for argument's sake—that the agencies will not "themselves" seek to "revive the 2015 Rule" in the foreseeable future. *Ohio v. EPA*, 969 F.3d at 309. (Even that is a bit of a question mark: within the 2021 Proposal, the agencies suggested that "a second rulemaking" process will "build upon" the 2021 Proposal, 86 Fed. Reg. at 69374,

and they also seem to hold out hope as to the 2015 Rule's "legality," *id.* at 69407.) But despite the agencies' repeated efforts to change course, the 2015 Rule still looms over States—like Ohio and Tennessee—that have not yet obtained a court order enjoining the 2015 Rule within their territory. In particular, litigation outside of the agencies' or intervenors' control continues to threaten the 2015 Rule's return. A permanent injunction would, therefore, grant Ohio and Tennessee meaningful relief, as it would ensure that the 2015 Rule has no future effect in these States.

All of this accords with this Court's decision from two years ago. *See Ohio v. EPA*, 969 F.3d 306. Again, the Court concluded that this case, as a whole, was not moot. *Id.* at 310. In reaching that conclusion, the Court afforded some solicitude to the fact that the federal agencies were trying to move beyond the 2015 Rule. *Id.* But there remained the "plainly relevant circumstance" that many litigants were seeking to enjoin the 2019 Repeal, the 2020 Rule, or both. *Id.* It was thus "reasonably likely," given that litigation and the possibility of nationwide injunctions, that the 2015 Rule would return "in the foreseeable future." *Id.* (quotations omitted).

Circumstances have not changed in any way that shifts the outcome of that mootness analysis. If anything, it has become more likely that Ohio and Tennessee

will again be subject to the 2015 Rule absent an injunction. Notably, at the time of this Court's previous decision, both the 2019 Repeal and the 2020 Rule prevented the 2015 Rule's application to Ohio and Tennessee. After this Court's ruling, however, a district court vacated the 2020 Rule. *Pasqua Yaqui Tribe*, 557 F. Supp. 3d at 957; *see also Navajo Nation*, 2021 WL 4430466, at *1. And the agencies view that vacatur as having nationwide effect. *Current Implementation of Waters of the United States*, EPA (updated Sept. 16, 2021), https://perma.cc/HJ67-3Z5A. The upshot is that the 2015 Rule is closer today to being resuscitated than it was two years ago, when this Court held that the case remained live: the 2019 Repeal is now the only thing keeping the 2015 Rule from applying to Ohio and Tennessee.

The 2019 Repeal continues to face legal challenges. By the States' count, there are at least six pending cases—brought by sixteen different plaintiffs—that involve challenges to the 2019 Repeal. *See Pasqua Yaqui Tribe* v. *EPA,* 557 F. Supp. 3d 949 (D. Ariz.); *Navajo Nation* v. *Regan,* No. 20-cv-00602 (D.N.M.); *Chesapeake Bay Foundation, Inc.* v. *Regan*, No. 1:20-cv-01063 (D. Md.); *Puget Soundkeeper All. v. EPA*, No. 2:20-cv-00950 (W.D. Wash.); *New Mexico Cattle Growers' Assoc. v. EPA*, No. 1:19-cv-988 (D.N.M.); *Washington Cattlemen's Assoc. v. EPA*, No. 2:19-cv-569 (W.D. Wash). True, those cases are currently on pause as the agencies continue their rulemaking process. But the plaintiffs are presumably continuing those cases

(rather than just dismissing them) in hopes of resuming litigation so that "the 2015 Rule might again take effect." *Ohio v. EPA*, 969 F.3d at 310. And the 2015 Rule will again take effect, at least in States without an injunction, if even one of those plaintiffs wins a nationwide injunction.

Putting all of this together, the States continue to have a "reasonable expectation"—especially in the plaintiff-friendly way mootness standards gauge expectations—that the 2015 Rule may return within "the foreseeable future." *Id.* at 310 (quotations omitted). Or, stated in other mootness terms, it is not "absolutely clear" that the wrongful behavior is finished. *Trinity Lutheran*, 137 S. Ct. at 2019 n.1. With litigation challenging the 2019 Repeal still pending, one cannot honestly say that the effects of the 2015 Rule have been "*irrevocably* eradicated" for States that lack injunctive relief. *See Davis*, 440 U.S. at 631 (emphasis added). Or, to borrow this Court's words, even with "the changes in law" that the agencies have attempted, the 2015 Rule still "threaten[s] harm." *Sullivan*, 920 F.3d at 410–11.

Three other points reinforce the fact that the case here is not moot. *First*, the agencies' and intervenors' own admissions cut against any finding of mootness. For example, through their 2021 Proposal, the agencies expressed their own fears that litigation over "the waters of the United States" could resurrect a once-slain rule. The agencies' principal goal, in announcing the 2021 Proposal, was "re-

placement of" the 2020 Rule.  86 Fed. Reg. at 69373.  Arguably, that goal was already accomplished months before the 2021 Proposal, since a district court vacated the 2020 Rule last August.  But the agencies pressed forward with the 2021 Proposal because there was a chance that "further developments in litigation … could bring" the 2020 Rule "back into effect."  *Id.*  The intervenors, for their part, conceded below that they could not "predict with certainty what will happen in other cases" involving the 2019 Repeal.  Intervenors' Supp. Br., R.122, PageID#2263.  It follows that the requisite "certainty" needed for mootness is lacking.  *See Aladdin's Castle*, 455 U.S. at 289; *accord Trinity Lutheran*, 137 S. Ct. at 2019 n.1 (requiring that voluntary cessation be "absolutely clear").

*Second*, the agencies' 2021 Proposal offers the States no legal protection until it is finalized.  And finalization of the 2021 Proposal might be months or years away—or it might never happen at all.  To make matters worse, the 2021 Proposal supplies ammunition to anyone challenging the 2019 Repeal:  the agencies express "significant concerns regarding the legal rationale underpinning the 2019 Repeal." 86 Fed. Reg. at 69407.  Even assuming the agencies finalize the 2021 Proposal, it seems a safe bet (in this litigious area) that the finalized rule will face challenges of its own.  States or regulated parties might well take issue with the agencies' heavy reliance on the significant-nexus standard from Justice Kennedy's *Rapanos* concur-

rence, *see* 86 Fed. Reg. at 69395, which is more expansive than the *Rapanos* plurality's interpretation. Challenges would be especially likely if the Supreme Court adopts the *Rapanos* plurality's test as the governing standard in *Sackett v. EPA*, No. 21-454 (U.S.).

*Third*, in considering whether there is a "fair prospect" that the 2015 Rule will spring back to life, *see Ohio v. EPA*, 969 F.3d at 310, it is worth recalling the volatile history of the 2015 Rule. As the agencies have put it, "the applicability of the rule has remained in flux due to a shifting set of preliminary injunctions." 84 Fed. Reg. at 56631. For example, in early 2018, the agencies tried to suspend the 2015 Rule. 83 Fed. Reg. at 5200. They did not succeed; environmental groups immediately challenged the 2018 Suspension and quickly won an order enjoining it nationwide. *S.C. Coastal Conservation League v. Pruitt*, 318 F. Supp. 3d at 959. Based on those events, Ohio and Tennessee were subject to the 2015 Rule for well over a year. Surely it is reasonable for the States to be concerned for the future based on past experience.

## II. The District Court's contrary analysis is unpersuasive.

The District Court wrongly held that this case was moot.

**A.** As an initial matter, the District Court applied an insufficiently demanding standard. It acknowledged that a defendant must "demonstrate" mootness,

Op., R.126, PageID#2286, but it said nothing to signal that it appreciated the high level of certainty that a finding of voluntary cessation requires. Indeed, the court simply skipped the second prong of the voluntary-cessation test. *See id.*, Page-ID#2286. Thus, it never confronted the mandatory question of whether "interim relief or events have completely and irrevocably eradicated the effects" of the 2015 Rule. *See Davis*, 440 U.S. at 631.

Other aspects of the District Court's analysis confirm that it did not hold the agencies to their burden. For instance, quoting from this Court's decision in *Brandywine*, 359 F.3d 830, the District Court suggested that courts have no ability to issue relief once a challenged law is no longer in effect. Op., R.126, PageID#2288. But that cannot be correct. Reading the quoted passage in context, *Brandywine* did not set forth any such bright-line rule. Rather, it recognized that a case will *not* be moot if there is a credible threat that the challenged law will return. 359 F.3d at 836. And this Court has explained in other cases that changes in law will not moot a case when the changes "arguably do not remove the harm or threatened harm underlying the dispute." *Sullivan*, 920 F.3d at 410–11 (quoting *Cam I, Inc. v. Louisville/Jefferson County Metro Gov't*, 460 F.3d 717, 720 (6th Cir. 2006)).

In a similar vein, the District Court quoted another of this Court's decisions for the proposition that a government body's voluntary correction of misconduct

36

provides "a secure foundation for a dismissal based in mootness so long as [the correction] appears genuine." Op., R.126, PageID#2288 (quoting *Mosley*, 920 F.2d at 415). But this Court has clarified since *Mosley* that the degree of solicitude afforded to a government body's voluntary cessation varies a great deal depending on context. *Schlissel*, 939 F.3d at 768. Even if the government's corrective action appears genuine, the mootness analysis requires considering every other "relevant circumstance," including litigation, outside the government's control. *Ohio v. EPA*, 969 F.3d at 309.

**B.** The District Court's errors carried through to its application of the too-lax standard it announced. It held that the 2015 Rule's return was no longer sufficiently foreseeable for two reasons. First, the agencies issued the 2021 Proposal. Second, challenges to the 2019 Repeal are currently stayed. Op., R.126, PageID#2288–89. That analysis makes several presumptions in the agencies' favor, notwithstanding the fact that the agencies bear the burden to establish mootness. For example, the District Court presumed that the agencies will finalize the 2021 Proposal and that the plaintiffs challenging the 2019 Repeal will be satisfied with the final result. It also presumed that the agencies will be prompt in finalizing the 2021 Proposal and that no plaintiff challenging the 2019 Repeal will grow impatient with the rulemaking process. Finally, it presumed that no party will challenge the

2021 Proposal once finalized. *Id.*, PageID#2289. That last presumption is especial-ly shaky since every recent step the agencies have made in this area has been met with multiple lawsuits. *See, e.g.*, *North Dakota v. EPA*, 127 F. Supp.3d 1047; *Georgia v. Pruitt*, 326 F. Supp. 3d 1356; *S.C. Coastal Conservation League*, 318 F. Supp. 3d 959; *Puget Soundkeeper All.*, 2018 WL 6169196; *Pasqua Yaqui Tribe*, 557 F. Supp. 3d 949; *Navajo Nation v. Regan*, 2021 WL 4430466.

On the other side of the ledger, the District Court failed to credit points weighing in the States' favor. For one thing, the District Court made no mention of the fact that, as a direct result of a nationwide injunction from another district court, *S.C. Coastal Conservation League*, 318 F. Supp. 3d 959, Ohio and Tennessee were subject to the 2015 Rule for over a year during this case. Further, though the District Court stressed the agencies' repeated attempts to replace the 2015 Rule, Op., R.126, PageID#2288, it never explained how the failure of two attempts (the 2018 Suspension and the 2020 Rule) factored into the mootness analysis. And the District Court also failed to account for the agencies' and intervenors' admissions that they could not predict with certainty the course that litigation will take in this area. *See above* 33–34.

Lastly, the District Court's efforts to distinguish its decision from this Court's decision two years ago are unconvincing. The District Court stressed that,

at the time of this Court's mootness decision, there were fifteen cases challenging the 2019 Repeal and 2020 Rule, while today there are fewer such cases. Op., R.126, PageID#2288–89. On the surface, that difference might seem to favor mootness. Upon closer look, however, the reduction actually cuts *against* mootness. The main reason there are fewer cases today than there were two years ago is that, by eliminating the 2020 Rule, *see Pasqua Yaqui Tribe v. EPA*, 557 F. Supp. 3d 949, challengers accomplished one of their goals, removing one roadblock to the 2015 Rule's revival. The District Court, in distinguishing this Court's earlier ruling, also emphasized that challenges to the 2019 Repeal are currently stayed. Op., R.126, PageID#2289. But the District Court's analysis understates a significant point: many parties challenging the 2019 Repeal are not *dismissing* their cases. As this Court recognized two years ago, that is "presumably" because those parties still hope that "the 2015 Rule might again take effect." *Ohio v. EPA*, 969 F.3d at 310. At bottom, the slight differences between the facts now and the facts two years ago do not justify a different conclusion with respect to mootness.

# CONCLUSION

The Court should reverse the District Court's judgment and remand with instructions to adjudicate the States' summary-judgment motion on the merits.

Respectfully submitted,

DAVE YOST
Ohio Attorney General

*/s/ Benjamin M. Flowers*
BENJAMIN M. FLOWERS*
Solicitor General
   *Counsel of Record
ZACHERY P. KELLER
Deputy Solicitor General
30 East Broad Street, 17th Floor
6l4-466-8980
benjamin.flowers@ohioago.gov

*Counsel for State of Ohio*

HERBERT H. SLATERY III
Tennessee Attorney General
And Reporter

*/s/ Elizabeth P. McCarter*
ANDRÉE S. BLUMSTEIN
Solicitor General
ELIZABETH P. McCARTER
Senior Assistant Attorney General
P. O. Box 20207
Nashville, Tennessee 37202
615-532-2582

*Counsel for State of Tennessee*

# CERTIFICATE OF COMPLIANCE

I hereby certify, in accordance with Rule 32(g) of the Federal Rules of Appellate Procedure, this brief complies with the type-volume requirements for a principal brief and contains 8,691 words. *See* Fed. R. App. P. 32(a)(7)(B)(i).

I further certify that this brief complies with the typeface requirements of Federal Rule 32(a)(5) and the type-style requirements of Federal Rule 32(a)(6) because it has been prepared in a proportionally spaced typeface using Microsoft Word in 14-point Equity font.

/s/ Benjamin M. Flowers
BENJAMIN M. FLOWERS

## CERTIFICATE OF SERVICE

I hereby certify that on May 20, 2022, this brief was filed electronically. Notice of this filing will be sent to all parties for whom counsel has entered an appearance by operation of the Court's electronic filing system. Parties may access this filing through the Court's system.

*/s/ Benjamin M. Flowers*
BENJAMIN M. FLOWERS

# DESIGNATION OF DISTRICT COURT RECORD

Defendant-Appellee, pursuant to Sixth Circuit Rule 30(g), designates the following filings from the district court's electronic records:

*State of Ohio, et al., v. US EPA, et al.*, **2:15-cv-2467**

| Date Filed | R. No.; PageID# | Document Description |
|---|---|---|
| 6/29/2015 | R.1; 1–18 | Complaint |
| 7/23/2015 | R.20; 62–80 | Amended Complaint |
| 6/20/2018 | R.64; 774–816 | Supplemental Memorandum Supporting Preliminary Injunction |
| 3/26/2019 | R.86; 1175–81 | Opinion and Order |
| 8/27/2021 | R.103; 1241–309 | Motion for Summary Judgment |
| 11/1/2021 | R.111; 1325–56 | Opposition to Motion for Summary Judgment |
| 11/1/2021 | R.112; 1357–419 | Intervenor's Cross-Motion for Summary Judgment |
| 11/15/2021 | R.116; 2152–217 | Reply in Support of Motion for Summary Judgment |
| 3/4/2022 | R.120; 2247 | Order |
| 3/10/2022 | R.122; 2259–65 | Intervenor's Brief in Support of Dismissing Case as Moot |
| 3/23/2022 | R.126; 2283–89 | Opinion |
| 3/23/2022 | R.127; 2290 | Judgment |
| 4/4/2022 | R.128; 2291 | Notice of Appeal |